Yaman Salahi (Bar No. 288752)
Nasrina Bargzie (Bar No. 238917)
ASIAN AMERICANS ADVANCING JUSTICE—ASIAN LAW CAUCUS
55 Columbus Ave.
San Francisco, California 94111-2101
Telephone: + 1 (415) 848-7711
Facsimile: + 1 (415) 896-1702
Email: yamans@advancingjustice-alc.org; nasrinab@advancingjustice-alc.org

Wendy L. Feng (Bar No. 200813)
Joanne Sum-Ping (Bar No. 296552)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: wfeng@cov.com; jsumping@cov.com

*Attorneys for Plaintiff Mosed Shaye Omar*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MOSED SHAYE OMAR<br><br>　　　Plaintiff,<br><br>　　v.<br><br>JOHN KERRY, Secretary of State, in his official capacity; MICHELE T. BOND, Acting Assistant Secretary for Consular Affairs, in her official capacity; BRENDA SPRAGUE, Deputy Assistant Secretary for Passport Services, in her official capacity; U.S. DEPARTMENT OF STATE,<br><br>　　　Defendants. | Civil Case No.: 15-01760-JSC<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>ORAL ARGUMENT REQUESTED<br><br>Date: July 30, 2015<br><br>Time: 9:00 AM.<br><br>Courtroom: F<br><br>Magistrate Judge: Jacqueline Scott Corley |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

INTRODUCTION AND SUMMARY OF ISSUES TO BE DECIDED ...................... 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT ............................................................................................................ 6

I.      Mr. Omar is Likely to Succeed on the Merits.................................................. 6

    A.      Defendants violated Mr. Omar's due process rights by revoking his U.S. passport
        solely on the basis of an involuntary statement ...................................... 8

    B.      Defendants violated Plaintiff's due process rights by failing to support the
        revocation with "clear and convincing evidence." ............................... 10

        1.      Due process requires administrative adjudications resulting in a
            deprivation of liberty to hold the government to a standard of proof ....... 11

        2.      A passport revocation must be justified by clear and convincing evidence
            because it involves a significant liberty interest ...................................... 13

        3.      Defendants' failure to apply a clear and convincing evidence standard of
            proof to the revocation hearing prejudiced Mr. Omar ............................. 14

    C.      Defendants exceeded their statutory authority by revoking Plaintiff's U.S.
        passport on the basis that he obtained it "fraudulently" by using his name, the
        name on his judicial Certificate of Naturalization ................................. 18

II.     Mr. Omar Has Suffered and Continues to Endure Irreparable Harm From the Continued
    Violation of his Constitutional Rights ........................................................... 22

III.    The Balance of Hardships and Public Interest Favor an Injunction to Prevent Further
    Constitutional Violations ............................................................................... 23

CONCLUSION...................................................................................................... 25

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addington v. Texas*,
   441 U.S. 418 (1979)................................................................................11, 13, 14

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ................................................................6, 24

*Aptheker v. Secretary of State*,
   378 U.S. 500 (1964)................................................................6, 7, 13, 22

*Basco v. Machin*,
   514 F.3d 1177 (11th Cir. 2008) .......................................................................12

*Bauer v. Acheson*,
   106 F. Supp. 445 (D.D.C. 1952) ..........................................................................8

*Bender v. Clark*,
   744 F.2d 1424 (10th Cir. 1984) ..........................................................................12

*Blackburn v. Alabama*,
   361 U.S. 199 (1960) ..............................................................................................8

*Chaunt v. United States*,
   364 U.S. 350 (1960).............................................................................................13

*Choy v. Barber*,
   279 F.2d 642 (9th Cir. 1960) ...........................................................................8, 9

*Colorado v. New Mexico*,
   467 U.S. 310 (1984)......................................................................................15, 17

*Cruzan v. Dir., Missouri Dep't of Health*,
   497 U.S. 261 (1990).............................................................................................13

*Dela Cruz v. Napolitano*,
   764 F. Supp. 2d 1197 (S.D. Cal. 2011)...............................................................12

*DeNieva v. Reyes*,
   966 F.2d 480 (9th Cir. 1992) .................................................................7, 22, 23

*Drakes Bay Oyster Co. v. Jewell*,
   747 F.3d 1073 (9th Cir. 2014) ...........................................................................23

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

ii

*Elrod v. Burns*,
   427 U.S. 347 (1976)............................................................................................22

*Fisher v. Kealoha*,
   No. 11–00589..................................................................................................22

*United States ex rel. Hudson v. Cannon*,
   529 F.2d 890 (7th Cir. 1976) ...........................................................................15

*Jackson v. Denno*,
   378 U.S. 368 (1964)..........................................................................................15

*Jacobsen v. USPS*,
   812 F.2d 1151 (9th Cir. 1987) .........................................................................22

*Jew Jock Koon v. Dulles*,
   139 F. Supp. 205 (S.D. Tex. 1955) ..................................................................21

*Johanessen v. United States*,
   225 U.S. 227 (1912)..........................................................................................19

*Kent v. Dulles*,
   357 U.S. 116 (1958)................................................................................. *passim*

*Kungys v. United States*,
   485 U.S. 759 (1988)..........................................................................................19

*Latif v. Holder*,
   28 F. Supp.3d 1134, 1148 (D. Or. 2014) .........................................................23

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*,
   752 F.3d 755 (9th Cir. 2014) ...........................................................................23

*Lee Hon Lung v. Dulles*,
   261 F.2d 719 (9th Cir. 1958) ...........................................................................14

*Legend Night Club v. Miller*,
   637 F.3d 291 (4th Cir. 2011) ...........................................................................24

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ...........................................................................23

*Magnuson v. Baker*,
   911 F.2d 330 (9th Cir. 1990) ....................................................................19, 20

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ...........................................................................22

*In re Mendiola*,
   647 F. Supp. 839 (S.D.N.Y. 1986)...................................................................20

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

iii

*Mondaca-Vega v. Holder*,
  718 F.3d 1075 (9th Cir. 2013), *reh'g en banc granted*, 735 F.3d 1093 (9th Cir. 2013)......................16

*Mut. Benefit Life Ins. Co. v. Tisdale*,
  91 U.S. 238 (1875)..............................................................................................................................19

*Navia-Duran v. INS*,
  568 F.2d 803 (1st Cir. 1977)......................................................................................................8, 9, 10

*Nguyen v. INS*,
  533 U.S. 53 (2001)..............................................................................................................................13

*Nishikawa v. Dulles*,
  356 U.S. 129 (1958)............................................................................................................................13

*Preminger v. Principi*,
  422 F.3d 815 (9th Cir. 2005) .............................................................................................................24

*Roe v. Anderson*,
  134 F.3d 1400 (9th Cir. 1998) ...........................................................................................................22

*Sammartano v. First Jud. Dist. Ct.*,
  303 F.3d 959 (9th Cir. 2002) .............................................................................................................24

*Santosky v. Kramer*,
  455 U.S. 745 (1982)............................................................................................................................13

*Schneiderman v. United States*,
  320 U.S. 118 (1943)............................................................................................................................14

*Smith v. United States*,
  348 U.S. 147 (1954)............................................................................................................................15

*Soo Hoo Doo Wing v. Dulles*,
  147 F. Supp. 862 (D. Conn. 1956).....................................................................................................21

*Spratt v. Spratt*,
  29 U.S. 393 (1830)........................................................................................................................19, 22

*United States v. Booth*,
  669 F.2d 1231 (9th Cir. 1981) ...........................................................................................................10

*United States v. Mezas de Jesus*,
  217 F.3d 638 (9th Cir. 2000) .............................................................................................................17

*United States v. Restrepo*,
  946 F.2d 654 (9th Cir. 1991) .............................................................................................................17

*United States v. Rossi*,
  299 F.2d 650 (9th Cir. 1962) .............................................................................................................19

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

iv

*United States v. Yi*,
   704 F.3d 800 (9th Cir. 2013) ................................................................................15

*Vartelas v. Holder*,
   132 S. Ct. 1479 (2012) ........................................................................................24

*In re Winship*,
   397 U.S. 358 (1970) .......................................................................................11, 17

*Winter v. NRDC*,
   555 U.S. 7 (2008) ...........................................................................................6, 25

*Wong Fon Haw v. Dulles*,
   125 F. Supp. 658 (S.D.N.Y. 1954) ......................................................................21

*Woodby v. INS*,
   385 U.S. 276 (1966) ...............................................................................11, 13, 14

**Other Authorities**

5 U.S.C. § 706 ......................................................................................10, 11, 18

8 U.S.C. § 1185(b) ......................................................................................................7

8 U.S.C. § 1503 .....................................................................................................20, 21

8 U.S.C. § 1504 .........................................................................................7, 11, 18, 19

22 U.S.C. § 211a ........................................................................................................7

22 C.F.R. § 51.23 .....................................................................................................18

22 C.F.R. § 51.25(a) ................................................................................................18

22 C.F.R. § 51.43(b)(1)(i) .......................................................................................18

22 C.F.R. § 51.62(a)(2) ....................................................................................4, 5, 19

22 C.F.R. § 51.70 .....................................................................................................11

22 C.F.R. § 51.71 .....................................................................................................11

22 C.F.R. § 51.72 .....................................................................................................11

41 U.S. Op. Atty. Gen. 452 (Jan. 19, 1960) ...........................................................20

Fed. R. Civ. P. 65 ......................................................................................................1

U.S. Const. amend. V ........................................................................................*passim*

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

v

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 30, 2015, at 9:00 AM, in the Courtroom of the Honorable Jacqueline Scott Corley, in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Mosed Shaye Omar will, and hereby does, move for a preliminary injunction requiring Defendants to return or reissue Mr. Omar's passport to him. Fed. R. Civ. P. 65.

This motion is supported by the following Memorandum of Points and Authorities, and declarations and exhibits attached thereto; on all papers, pleadings, records and files in this case; on all matters of which judicial notice may be taken; and on such other argument and/or evidence as may be presented to this Court at a hearing on this motion.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION AND SUMMARY OF ISSUES TO BE DECIDED

Mosed Shaye Omar's passport was taken from him at the U.S. Embassy in Sana'a, Yemen in January 2013 based solely upon a statement that Mr. Omar denounces and in which he purportedly asserted that the name he has used all his life is not in fact his real name. Mr. Omar, who was 62 years old at the time, signed the statement presented to him by Embassy officials after they had taken his passport and had subjected him to hours of interrogation and confinement at the Embassy, and he did so after being led to believe that if he signed the document, his passport would be returned.

The statement was obtained in violation of Mr. Omar's Fifth Amendment rights and therefore cannot be used as a basis to revoke his passport. Yet even if Mr. Omar's statement had been freely given, Defendants' basis for revocation—that Mr. Omar obtained his passport "fraudulently" despite using the name on his judicial Certificate of Naturalization to apply for it—exceeds their statutory authority.

A preliminary injunction is necessary to vindicate Mr. Omar's rights, and is warranted under the circumstances presented in this case. First, Mr. Omar is likely to succeed on the merits of his constitutional claims, given the well-established constitutional right to travel and to due process, and Defendants' failure to apply the appropriate standard of evidence to meet its burden of proof. Second, Mr. Omar has been and continues to be irreparably harmed by Defendants' actions, and by his ongoing

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

1

inability to travel without his passport. Third, the lawful exercise of constitutional rights presumptively serves the public interest, and the equities favor the party exercising those rights. Defendants gain little from depriving Mr. Omar of his passport, while Mr. Omar has lost his ability to travel, one of his fundamental constitutional rights. Absent a preliminary injunction, Mr. Omar will continue to suffer irreparable harm.

### STATEMENT OF FACTS

Mosed Omar is a 64-year-old American citizen who came to the United States in 1972 after his father, who adopted him at a young age, petitioned for an immigration visa through the U.S. Embassy in Sana'a. *See* Declaration of Yaman Salahi in Support of Plaintiff's Motion for Preliminary Injunction ("Salahi Decl.") ¶ 9, Ex. 6, ¶¶ 1-3 (hereinafter ("Omar Decl.")). Mr. Omar obtained an immigrant visa and moved to the United States. Omar Decl. ¶ 3.

Mr. Omar applied for naturalization and took an oath of U.S. citizenship in U.S. District Court in Detroit, Michigan 1978. *Id.* Mr. Omar was issued a judicial Certificate of Naturalization. *Id.*¶ 45. The judicial certificate has never been revoked.

In June 2012, Mr. Omar traveled to Yemen in hopes of finally obtaining a U.S. passport for K.O., his minor daughter who was born in Yemen. *Id.* ¶ 4. Mr. Omar spent several months in Yemen in 2012, waiting to hear back from the Embassy about the status of K.O.'s application. *Id.* ¶ 5. Finally, after informing the Embassy that he intended to return to the U.S. for medical reasons (he is diabetic and has other medical conditions that require regular monitoring and medication), *see id.* ¶¶ 1, 6, Mr. Omar received a phone call informing him there was "good news" about his daughter's passport application and he should come to the Embassy. *Id.* ¶ 7.

On January 23, 2013, Mr. Omar went to the U.S. Embassy in Sana'a early in the morning in response to their call. *Id.* ¶ 8. When he arrived at the Embassy, his passport was taken from him when he checked in for his appointment, and he was told to wait. *Id.* After some time, two Embassy officials then escorted him to an interrogation room. *Id.* ¶¶ 9-11.

To reach the interrogation room, the Embassy officials took Mr. Omar out of the consular building to a separate secure building that was not accessible to the public. *Id.* In that building, Mr. Omar was led through a secure hallway to a closed room. *Id.* ¶¶ 9-11. The personnel in this building

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

2

were all armed, and there was no way for Mr. Omar to leave the building or the room without the permission of the Embassy officials. *Id.*

Mr. Omar was not advised of his right to remain silent or to consult an attorney before an interrogator (whom he later learned was Diplomatic Security Agent David Howell) began questioning him about his name, his family, and his immigration history. *Id.* ¶ 16. During the interrogation, Mr. Omar did not feel free to leave. *Id.* ¶¶ 13-18. After about an hour, Mr. Omar was escorted back to the waiting room in the consular building where he was told to wait. His passport was not returned to him. *Id.* ¶ 18.

After some time, Mr. Omar was escorted back into the interrogation room. *Id.* ¶ 19. During the second interrogation, Mr. Omar began to feel ill. *Id.* ¶ 20. He was distressed and afraid. *Id.* After Agent Howell questioned him again for over an hour, Mr. Omar was escorted back to the general waiting room and again told to wait. *Id.* ¶ 21. He waited several more hours, still without his passport. *Id.* ¶¶ 21-23.

During this waiting period, Mr. Omar's physical condition worsened. *Id.* He had not been able to take his regular medication or eat or drink for many hours; and he had no way to contact family or friends for help. *Id.* ¶¶ 21-22. His vision became blurred. *Id.* ¶ 25. Around 4 pm, after he had been at the embassy for nearly nine hours, he told a guard that he was sick and exhausted and would do anything to go home with his passport. *Id.* ¶ 24. The guard informed other personnel, and Mr. Omar was escorted back to the interrogation room for a third time. *Id.*

Inside the interrogation room, an Embassy official handed him a paper (the "Interrogation Statement") and told him, "just sign this and go pick up the passports from the consul." *Id.* ¶ 26. The paper was not interpreted for Mr. Omar. *Id.* ¶ 27. With his blurred vision and limited English proficiency, Mr. Omar was unable to read or understand the paper himself. *Id.* He signed it only because he had been told that it was what he needed to do to leave the Embassy with his and his daughter's passports. *Id.* Mr. Omar signed the document with his name, "Mosed S. Omar." *See id.*; Salahi Decl. ¶ 7, Ex. 4 at 3 (hereinafter "Interrogation Statement").

After he signed the Interrogation Statement, Mr. Omar was taken back to the general waiting area, where he remained until a consular official appeared at a window. Omar Decl. ¶ 28. Based on what the interrogator had told him, Mr. Omar expected the official to return his passport to him. *See id.* ¶¶ 27-

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

3

28. Mr. Omar asked for his passport but the official refused, saying that Mr. Omar had confessed that he had another name. *Id.* ¶ 28. The official closed the window without providing Mr. Omar a written explanation for the confiscation of his passport or any information on how he could appeal the decision. *Id.* ¶ 30. Nor did the official explain to Mr. Omar how he could return to the U.S. without his passport. *Id.* Mr. Omar left the Embassy that day without any means to travel home. *Id.*

Mr. Omar attempted to contact the Embassy several times in the months following January 23, 2013, requesting that his passport be returned or that he be given information on how to return to the United States without a passport to receive medical treatment. *Id.* ¶¶ 35, 38. Mr. Omar explained his medical needs in several e-mails to the Embassy. *Id.* However, he was not provided an official explanation for the revocation or an opportunity to request an appeal until December 15, 2013, *id.* ¶ 39, and he finally received a limited validity passport to facilitate his return to the U.S. in February 2014, *id.* ¶ 40. Mr. Omar returned to the U.S. that month, having spent 13 months stranded in Yemen, away from his family and life in the United States. *Id.* ¶ 41. Mr. Omar's limited validity passport was confiscated upon arrival in San Francisco. *Id.*

According to the revocation notice, Defendant U.S. Department of State ("State Department" or "Department") revoked Mr. Omar's passport on the basis that his use of the name "Mosed Shaye Omar" to obtain a passport constituted "a false statement of material fact" under 22 C.F.R. § 51.62(a)(2).Salahi Decl. ¶ 6, Ex. 3.

After Mr. Omar requested an administrative hearing to contest the revocation within 60 days of receiving the revocation notice at the U.S. Embassy in Sana'a, the Department informed Mr. Omar in a letter dated August 6, 2014 that a hearing had been scheduled on September 22, 2014 for the sole purpose of deciding "whether or not the Department satisfied the requirements or conditions of the applicable passport regulations cited as the basis for its adverse action, *not your citizenship status*." *Id.* ¶ 23, Ex. 20.

Mr. Omar retained counsel on August 20, 2014, *id.* ¶ 2, and the parties exchanged written submissions and exhibits on September 15, 2014, *id.* ¶ 3. In its submission, the Department argued that

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

4

Mr. Omar "fraudulently obtained" his U.S. passport under 22 C.F.R. § 51.62(a)(2)[1] by using the name "Mosed Shaye Omar" to apply for the passport, based on an Interrogation Statement he signed at the Embassy in January 2013 supposedly admitting that "Mosed Shaye Omar" is a "false identity." *Id.* ¶ 4, Ex. 1 at 2-3.

A hearing was convened via video link on September 22, 2014 with Bennett S. Fellows, Division Chief of the Office of Adjudication, serving as the hearing officer. *Id.* ¶ 31. With the permission of Officer Fellows, Mr. Omar provided a supplemental submission on October 13, 2014. *Id.* ¶ 32, Ex. 28.

By letter dated October 29, 2014, Mr. Omar was informed that Defendant Deputy Assistant Secretary Brenda Sprague had, on the basis of Hearing Officer Fellows' October 17, 2014 recommendation, affirmed the revocation of Mr. Omar's U.S. passport on the grounds that his use of the name "Mosed Shaye Omar" to obtain a passport constituted fraud in violation of 22 C.F.R. § 51.62(a)(2). *Id.* ¶¶ 37-39, Exs. 33 and 34.

This situation has caused and continues to cause Mr. Omar a tremendous amount of heartache and stress. Declaration of Mosed Shaye Omar in Support of Plaintiff's Motion for Preliminary Injunction ("Supp. Omar Decl.") ¶ 8. He speaks to K.O. on at least a weekly basis, and K.O. asks him in almost every conversation when she will be able to join him in the United States. *Id.* ¶ 7. Her desperation has been exacerbated by the recent escalation of violence in Yemen. *Id.*

Mr. Omar is extremely worried about K.O.'s safety, given the recent escalation of hostilities and violence in Yemen. *Id.* ¶¶ 5-8. Mr. Omar wishes to do whatever he can to re-unite with K.O. and bring her to the United States. *Id.* ¶¶ 9-10. But without a valid U.S. passport, Mr. Omar is presently unable to leave the United States for any reason, including for the purpose of visiting K.O. and other relatives in Yemen. *Id.* ¶ 4. Although the U.S. Embassy in Sana'a is currently closed, Mr. Omar wants to be ready to travel to the U.S. Embassy in Sana'a to pursue his daughter's application for a Consular Report of Birth

---

[1] This regulation provides: "(a) The Department may revoke or limit a passport when… (2) The passport has been obtained illegally, fraudulently or erroneously; was created through illegality or fraud practiced upon the Department; or has been fraudulently altered or misused;…." 22 C.F.R. § 51.62(a)(2).

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

5

Abroad and U.S. passport as soon as it is open again. *Id.* ¶ 9. Without his passport, however, Mr. Omar cannot travel to Yemen to retrieve his daughter from the war zone. *Id.* ¶ 4.

## ARGUMENT

A preliminary injunction is warranted if Mr. Omar shows that (1) his claims will likely succeed on the merits; (2) he will otherwise suffer irreparable harm; and (3) the balance of equities and the public interest favor an injunction. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). The Ninth Circuit has adopted a "sliding scale" approach: if a plaintiff can show that there are at least serious questions going to the merits, then a preliminary injunction may issue if the balance of the equities tips sharply in the plaintiff's favor, and the other *Winter* factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

## I.    Mr. Omar is Likely to Succeed on the Merits

International travel is a basic facet of American life; the State Department estimates that over 120 million valid U.S. passports were in circulation in 2014.[2] As the Supreme Court has explained,

> Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values.

*Kent v. Dulles*, 357 U.S. 116, 126 (1958). A few years later, Justice Douglas elaborated:

> Freedom of movement, at home *and abroad*, is important for job and business opportunities—for cultural, political, and social activities—for all the commingling which gregarious man enjoys…. This freedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful—knowing, studying, arguing, exploring, conversing, observing and even thinking. Once the right to travel is curtailed, all other rights suffer, just as when curfew or home detention is placed on a person.

*Aptheker v. Secretary of State*, 378 U.S. 500, 519-20 (1964) (Douglas, J., concurring) (emphasis added). Freedom of travel is inextricably linked with other rights and liberty interests, such as freedom of association or the ability to care for a child abroad. *See, e.g.*, *Id.* at 517 (noting that "freedom of travel is

---

[2] *See* Passports Statistics, U.S. Department of State, *available at* http://travel.state.gov/content/passports/english/passports/statistics.html.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

6

a constitutional liberty closely related to rights of free speech and association," and holding that law authorizing Secretary of State to withhold passports on basis of alleged membership in Communist Party was unconstitutional).

This freedom to travel abroad "is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *Kent*, 357 U.S. at 125. Though Defendant Secretary of State has the exclusive authority to issue U.S. passports to U.S. citizens, *see* 22 U.S.C. § 211a, the Secretary is bound by the Fifth Amendment's due process clause in the issuance of passports since a valid passport is necessary to exercise one's freedom to travel abroad. See 8 U.S.C. § 1185(b).

In this context, the Fifth Amendment circumscribes the Department's discretion in two ways. **First**, the government must afford procedural due process when taking steps that would curtail a U.S. citizen's freedom to travel abroad. *See, e.g.*, *DeNieva v. Reyes*, 966 F.2d 480, 485 (9th Cir. 1992) (foreign national's due process rights violated when foreign passport was confiscated without hearing). In this case, the Department violated Mr. Omar's fundamental due process protections barring the use of involuntary statements and requiring the government to support the restriction of the right to travel abroad with clear and convincing evidence.[3] **Second**, the State Department's *substantive* basis for the revocation or denial of a U.S. passport must have been authorized by Congress. *See Kent*, 357 U.S. at 128-29 (Secretary of State does not have "unbridled discretion to grant or withhold a passport from a citizen for any substantive reason he may choose," but rather, must do so "pursuant to the lawmaking functions of the Congress"). In this case, the Department exceeded its statutory authority under 8 U.S.C. § 1504 by revoking Mr. Omar's passport in a manner that amounted to a collateral attack on his judicial Certificate of Naturalization.

---

[3] Plaintiff's complaint alleges other due process violations that are not addressed in this motion, but as to which Plaintiff reserves all rights. *See, e.g.*, Compl. ¶¶ 140-146 (Count Four).

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

7

1    **A.      Defendants violated Mr. Omar's due process rights by revoking his U.S. passport**

2    **solely on the basis of an involuntary statement.**

3          It is indisputable that Mr. Omar was entitled to due process protections at his passport revocation

4    hearing. *See Kent*, 357 U.S. at 125; *see also Bauer v. Acheson*, 106 F. Supp. 445, 451 (D.D.C. 1952)

5    (holding that revocation of passport without observing due process was without authority of law). Those

6    protections bar the government from relying on involuntary statements against an individual not only in

7    criminal prosecutions, *see Blackburn v. Alabama*, 361 U.S. 199, 205-08 (1960), but in any government

8    proceeding that would curtail a liberty interest. *See Choy v. Barber*, 279 F.2d 642, 647 (9th Cir. 1960)

9    (finding that use of involuntary statement in administrative proceeding violated the Fifth Amendment);

10   *see also Navia-Duran v. INS*, 568 F.2d 803, 810 (1st Cir. 1977) (finding statement inadmissible in an

11   administrative proceeding because it was coerced in violation of the Fifth Amendment).

12         In *Choy*, an involuntary statement was coerced from the plaintiff, Choy, after approximately

13   seven hours of interrogation, in two sessions. *Choy*, 279 F.2d at 644. At the end of the interrogation

14   process, the interrogator told Choy that if he did not admit that he was a member of the Communist

15   Party, he would be deported or charged with perjury. *Id*. at 645. As a result of these coercive actions,

16   Choy made a statement confessing membership in the Communist Party, which was then admitted into

17   evidence against him at a subsequent administrative hearing. *Id*. At the hearing, Choy described the

18   improper means by which his prior statement had been coerced. *Id*. at 644. Choy's testimony about his

19   treatment by government interrogators was "unchallenged." *Id*. at 646. The Ninth Circuit found that

20   Choy's statement, as a matter of law on these facts, was obtained by coercion "in violation of the due

21   process clause of the Fifth Amendment." *Id*. The statement was thus inadmissible at the hearing, as an

22   agency action "cannot turn upon utterances cudgeled from the alien by governmental authorities. . . . It

23   requires no stretch of the imagination to appreciate the mental terror the government officials' treatment

24   caused Choy. Consequently, the inclusion into evidence of Choy's April 17 statement transgressed due

25   process of law." *Id*. at 646-47.

26         Similarly, in *Navia-Duran*, the First Circuit reversed and remanded a deportation ruling that was

27   based solely on an involuntary statement by Navia-Duran, a native of Chile, who attested that she had

28   been interrogated for two-and-a-half hours and was told (in Spanish) that she had two weeks to leave the

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

8

country or else she would be deported. *Navia-Duran*, 568 F. 2d at 805. Following that interrogation, Navia-Duran signed a statement indicating that she had overstayed a visitor's visa because she believed she needed to cooperate with her interrogator. *Id.* The Court found that use of the statement was a violation of Navia-Duran's due process rights, *see id.*, and that "where the only evidence presented was Ms. Navia-Duran's admission, there can be no doubt that the inadmissibility of that statement leaves the deportation order totally unsupported." *Id.* at 811.

The State Department's decision upholding the revocation of Mr. Omar's passport should likewise be set aside. As in *Choy* and *Navia-Duran*, the Interrogation Statement was "cudgeled" from Mr. Omar while he was in a weakened physical and emotional state, in violation of his Fifth Amendment due process rights. Mr. Omar's testimony under penalty of perjury—which the State Department offered no evidence to rebut—established that he only signed the Interrogation Statement after prolonged detention and interrogation, during which he was deprived of food, water, and necessary medicine. Mr. Omar was afraid, and signed the statement only because he was told that by doing so he would be able to leave the Embassy with his and his daughter's passports. Omar Decl. ¶¶ 24-29. *Cf. Choy*, 279 F.2d at 647 (noting statement signed only to appease officers who had threatened Choy with deportation in three weeks); *Navia-Duran*, 568 F.2d at 805 (noting plaintiff feared she would not be able to go home if she did not sign). Due to his medical state and his limited English proficiency, Mr. Omar could not read or understand the statement that he signed, and it was not explained to him. Omar Decl. ¶ 27.

Also like the statement considered in *Choy*, the Interrogation Statement was "received in evidence" by the hearing officer and "specifically taken into consideration." *See Choy*, 279 F.2d at 647; *see also Navia-Duran*, 568 F.2d at 807 ("[Immigration Judge's] reference to voluntariness in his opinion suggests that he considered the question."). The hearing officer relied on the Interrogation Statement despite objections from Mr. Omar's attorneys that it violated Mr. Omar's due process rights; in his recommendation, Officer Fellows did not rebut Mr. Omar's argument that the statement was signed

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

9

involuntarily.[4] Salahi Decl. ¶ 39, Ex. 34 (hereinafter "Final Decision"). Officer Fellows cited no evidence other than the coerced Interrogation Statement, which was wholly uncorroborated, in support of his decision. *Id.* If the Interrogation Statement had not been improperly admitted against Mr. Omar, the record would not have contained even a scintilla of evidence supporting the State Department's allegation that Mr. Omar's identity was "false." Mr. Omar was thus severely prejudiced by the government's violation of his Fifth Amendment due process rights.

For these reasons, there is a strong likelihood that Mr. Omar will succeed on his claim that the State Department violated his Fifth Amendment due process rights and the revocation should be set aside under 5 U.S.C. § 706(2).

### B. Defendants violated Plaintiff's due process rights by failing to support the revocation with "clear and convincing evidence."

Defendants also failed to apply the appropriate standard of proof—one of "clear and convincing evidence"—to justify revocation of Mr. Omar's passport, in violation of Mr. Omar's due process rights. *See* 5 U.S.C. §§ 706(2)(A), (D) (court may set aside agency action which is "arbitrary, capricious, an

---

[4] Officer Fellows addressed whether a *Miranda* warning was necessary, stating "[t]he claim that Mr. Alghazali was due a *Miranda* warning because he was subject to custodial interrogation is unconvincing as the petitioner was never told he could not leave the embassy." *See* Final Decision at 5. As Mr. Omar's brief had explained, however, a statement that is involuntary must be suppressed irrespective of whether a *Miranda* warning would have been required. The brief explained that the absence of a warning is "a relevant factor in assessing the question of voluntariness." *See* Salahi Decl. ¶8, Ex. 5 at 18 (citing *Navia-Duran*, 568 F.2d at 808). That said, even with respect to *Miranda*, Officer Fellows mis-stated and mis-applied the law. Whether a person has been subjected to a custodial interrogation for *Miranda* purposes is not based on whether he was explicitly told he could not leave, but rather requires "reviewing the totality of facts involved at the time of the alleged restraint," including "the language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual." *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981) ("Based upon a review of all the pertinent facts, the court must determine whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave."). A reasonable person in Mr. Omar's circumstances would clearly not have felt free to leave.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

10

1   abuse of discretion, or otherwise not in accordance with law," or taken "without observance of

2   procedure required by law").

### 1.   Due process requires administrative adjudications resulting in a deprivation of liberty to hold the government to a standard of proof.

An evidentiary standard is a basic requirement of due process that "has traditionally been left to the judiciary to resolve." *Woodby v. INS*, 385 U.S. 276, 285 (1966) (holding that although Congress had not provided a standard of proof for removal proceedings, the appropriate constitutional standard was "clear, unequivocal, and convincing" evidence). The Supreme Court has explained that the standard of proof serves two functions: first, to "'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication,'" *Addington v. Texas*, 441 U.S. 418, 423 (1979) (quoting *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring)); and, second, "to allocate the risk of error between the litigants and to indicate the relative importance to the ultimate decision." *Addington*, 441 U.S. at 423.

Neither Congressional statute nor Department regulations specify a standard of proof for passport revocation hearings. *See* 8 U.S.C. § 1504; 22 C.F.R. § 51.70 *et seq.*[5] On behalf of Mr. Omar, counsel asked both the hearing officer and the government representative what standard of proof applied to the hearing, but both replied only that the hearing was "informal;" neither one could identify an applicable standard. *See* Salahi Decl. ¶ 40, Ex. 35 at 43:5-8 ("MS. MODY: It's my understanding that there is no stated burden of proof, and that because this is an informal hearing, there are not very many rules governing the hearing itself…"); *id.* at 43:12-16 ("COMMISSIONER FELLOWS: As Ms. Mody said, as an administrative hearing and as I sort of laid out at the start, it's very informal. So the same

---

[5] The Department's regulations state only that a hearing officer "will make findings of fact and submit recommendations based on the record of the hearing as defined in § 51.72 to the Deputy Assistant Secretary for Passport Services in the Bureau of Consular Affairs." 22 C.F.R. § 51.71(a). Aside from requiring the hearing officer to "impose reasonable restrictions on relevancy, materiality, and competency of evidence presented," 22 C.F.R. § 51.71(d), the Department's regulations do not provide any guidance on how the hearing officer should weigh the evidence or what burden the Department must carry to sustain its revocation action.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT   Civil Case No.: 15-01760-JSC

11

burdens that you might face in a courtroom don't necessarily apply in this hearing."). The Department's final decision concerning Mr. Omar's passport revocation did not explain what standard of proof the hearing officer relied on to make his findings either. *See* Final Decision at 4-5.

The absence of any standard in the Department's passport revocation hearings generally and in Mr. Omar's hearing specifically is an unconstitutional deficiency. *Cf. Dela Cruz v. Napolitano*, 764 F. Supp. 2d 1197, 1201 (S.D. Cal. 2011) (holding that immigration judge's "failure to articulate the standard of proof to which he was holding Respondents" violated due process because "[l]itigants and factfinders are entitled to know at the outset the standard of proof that applies to the claims being litigated"). Even if a passport revocation hearing is "informal,"[6] a standard of proof is still required. Although the Ninth Circuit has not squarely addressed the question, other circuits have held that the requirement for a standard of proof applies to "formal" and "informal" hearings alike under the Administrative Procedure Act. As the Tenth Circuit has explained:

> Although the procedural safeguards elicited in § 556 of the APA do not apply to informal administrative hearings, the agency's ultimate review of the evidence presented at any hearing must not controvert basic principles of fairness. If an agency elects to conduct an informal hearing, the proper standard of proof—one which considers all the interests concerned—must be invoked.

*Bender v. Clark*, 744 F.2d 1424, 1429 (10th Cir. 1984) (citation omitted). *See also Basco v. Machin*, 514 F.3d 1177, 1183 (11th Cir. 2008) (concluding that state "bears the burden of persuasion at an *informal* administrative hearing*" terminating Section 8 benefits, and reversing where government failed to meet burden) (emphasis added).

Treating a hearing as "informal" is thus no license to evade the requirements of fundamental fairness. The question is not *whether*, but rather, *what* burden applies.

_____

[6] Plaintiff does not agree with the contention that passport revocation hearings are appropriately "informal." Plaintiff's Sixth Cause of Action, which is not argued in this motion, asserts that passport revocation hearings must be afforded the full protections of formal adjudications under the APA. *See* Compl. ¶¶ 151-155.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

12

2. **A passport revocation must be justified by clear and convincing evidence because it involves a significant liberty interest.**

The Supreme Court "has mandated an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (quoting *Addington*, 441 U.S. at 424). That heightened standard is "necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with 'a significant deprivation of liberty' or 'stigma.'" *Santosky*, 455 U.S. at 756 (quoting *Addington*, 441 U.S. at 425-26). Thus, the Supreme Court has mandated a heightened "clear and convincing" standard in several contexts affecting individual liberty. *See, e.g.*, *Nishikawa v. Dulles*, 356 U.S. 129, 134 (1958) (expatriation); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (denaturalization); *Woodby* (deportation); *Addington* (civil commitment); *Santosky* (termination of parental rights); *Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 284 (1990) (removal of life support).

A "clear and convincing standard" likewise should apply to passport revocations. Access to a passport implicates a fundamental liberty interest—that of international travel. *Kent*, 357 U.S. at 127 ("Freedom to travel is, indeed, an important aspect of the citizen's 'liberty.'"); *Aptheker*, 378 U.S. at 519-20 (Douglas, J., concurring). In Mr. Omar's case, the revocation of his passport also impaired his fundamental and absolute right to return to the United States. *See, e.g.*, *Nguyen v. INS*, 533 U.S. 53, 67 (2001) (referring to "the absolute right to enter [the United States'] borders" as a component of citizenship). A U.S. citizen stranded abroad without a passport is separated from his or her home, family, livelihood, friends, and freedoms in the United States, a punishment so drastic it is comparable to expatriation or deportation—deprivations for which the government has been held to a clear and convincing evidence standard. *See Woodby*, 385 U.S. at 285 ("This Court has not closed its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all bonds formed here and go to a foreign land where he often has no contemporary identification."). Although the Department eventually granted Mr. Omar a limited validity one-way passport, it only did so after he had been involuntarily exiled for 13 months, during which Mr. Omar had no means of exercising his absolute constitutional right to return home. Omar Decl. ¶¶ 34-35, 38, 40-41.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

13

Further, a heightened standard of proof is appropriate because "[t]he individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington*, 441 U.S. at 427. There is no doubt that the risk of injury to the individual by erroneous revocation of a passport—permanent loss of the freedom to travel outside the United States—is far greater than any possible harm to the state from the erroneous issuance of a passport to a U.S. citizen. The government's interest in preventing the erroneous issuance of passports is comparable to, and surely no greater than, its interest in preventing those not entitled to citizenship from continuing to live as U.S. citizens or in preventing those unlawfully present in the United States from remaining here—yet the Supreme Court has held that a clear and convincing standard applies to those proceedings. *See, e.g.*, *Schneiderman v. United States*, 320 U.S. 118, 159 (1943) (holding that permitting loss of citizenship in denaturalization proceeding on a standard lower than "'clear, unequivocal, and convincing' evidence" would mean that "valuable rights would rest upon a slender reed, and the security of the status of our naturalized citizens might depend in considerable degree upon the political temper of majority thought and the stresses of the times"); *Woodby*, 385 U.S. at 285-86 (refusing to accept that "a person may be banished from this country upon no higher degree of proof than applies in a negligence case," particularly since "[t]he immediate hardship of deportation is often greater than that inflicted by denaturalization, which does not, immediately at least, result in expulsion from our shores"). This is particularly true when, as in Mr. Omar's case, an individual has relied on his U.S. citizenship for nearly four decades. *See Lee Hon Lung v. Dulles*, 261 F.2d 719, 724 (9th Cir. 1958) (concluding that "where one has, over a long period of years [over thirty-four years], acted in reliance upon a decision of a board of special inquiry admitting him as a citizen of the United States, the fraud or error which will warrant disregard of such decision must be established by evidence which is clear, unequivocal, and convincing").

### 3. Defendants' failure to apply a clear and convincing evidence standard of proof to the revocation hearing prejudiced Mr. Omar.

If the Department *had* applied a "clear and convincing evidence" standard of proof to Mr. Omar's hearing, his passport revocation could not have been upheld on the record before it. In contrast to the lower preponderance of the evidence standard, clear and convincing evidence requires that "the

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

14

ultimate factfinder [have] an abiding conviction that the truth of [the] factual contentions are 'highly probable,'" a standard met "only if the material… offered [by one party] instantly tilted the evidentiary scales in the affirmative when weighed against the evidence… offered [by the other party] in opposition." *See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984); *see, also*, *United States v. Yi*, 704 F.3d 800, 806 (9th Cir. 2013) ("Clear and convincing evidence creates a conviction that the factual contention is highly probable.") (citation and internal quotation marks omitted). That is not true here.

At the revocation hearing, the Department's sole piece of evidence against Mr. Omar was the Interrogation Statement, which he signed under duress and without understanding its contents. Courts have often remarked that such statements are inherently unreliable. *See, e.g.*, *Jackson v. Denno*, 378 U.S. 368, 385-86 (1964) (noting the "probable unreliability of confessions that are obtained in a manner deemed coercive"); *accord, United States ex rel. Hudson v. Cannon*, 529 F.2d 890, 893 (7th Cir. 1976) (explaining that "historically… exclusion of coerced testimony was partially premised on the unreliability of such testimony"). In criminal cases, courts forbid reliance on a person's uncorroborated confession even if the individual cannot establish it was coerced. *See Smith v. United States*, 348 U.S. 147, 153 (1954) (explaining that even if a confession is not involuntary, "further caution is warranted" since it "may be suspect if it is extracted from one who is under the pressure of a police investigation— whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past"). "Further caution" about the Interrogation Statement is thus warranted given the circumstances of its procurement, and since the Department presented no evidence to corroborate its contents or to rebut Mr. Omar's claims that it was coerced from him. Omar Decl. ¶¶ 8-29.

Further, the Interrogation Statement, on its face, is poor support for the proposition that Mr. Omar confessed his name was not "Mosed Omar," because he signed that very statement with that name. The fact that the Department is relying upon a statement signed under a name that it claims is "fraudulent" severely undermines the Interrogation Statement's value as an admission against Mr. Omar and casts doubt on the credibility of the Department's allegation.

In contrast, Mr. Omar provided ample evidence corroborating his identity and citizenship, including a judicial Certificate of Naturalization issued in 1979 with a photograph that depicts him, several other forms of identification, and testimony from several individuals affirming his identity. *See*

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

15

Salahi Decl. ¶ 10, Ex. 7 (certificate of naturalization); Salahi Decl. ¶ 11, Ex. 8 (California driver's license); Salahi Decl. ¶ 12, Ex. 9 (social security card); Salahi Decl. ¶ 13, Ex. 10 (AFL-CIO membership card); Salahi Decl. ¶ 14, Ex. 11 (federal tax return); Salahi Decl. ¶ 16 (declaration of Naeema Omar); Salahi Decl. ¶ 36, Ex. 32 (translated affidavit from individuals in Yemen). *Cf. Mondaca-Vega v. Holder*, 718 F.3d 1075, 1081-83 (9th Cir. 2013), *reh'g en banc granted*, 735 F.3d 1093 (9th Cir. 2013) (petitioner presented "substantial credible evidence" in support of citizenship claim by proffering U.S. passport, birth certificate, and corroborating testimony from family members to shift burden to government to disprove his claim by clear and convincing evidence). The State Department offered no evidence to challenge the reliability or veracity of these documents. In fact, Officer Fellows inappropriately placed the burden of proof on Mr. Omar to prove a negative by reasoning that Mr. Omar's failure to provide documentary evidence of his name from 1951 to 1971—from four to seven decades ago—somehow cast doubt upon his true identity.[7] Not only was it inappropriate to shift the burden onto Mr. Omar, but the hearing officer's reasoning was flawed: Yemen has poor to non-existent official record-keeping practices, so it is the norm—not evidence of fraud—that an individual's documentary evidence of pre-immigration identity would have been created immediately prior to immigration.[8] Officer Fellows' conclusion is particularly unfair because he did not fault the State

---

[7] *See* Final Decision at 5 ("[T]he petitioner was provided with an opportunity to submit additional documentary evidence of identity after the conclusion of his hearing and was unable to produce a single document from the 20 years he lived in Yemen prior to applying for an immigrant visa. The one document provided [a World Health Organization vaccination card from 1972, which was in fact created when Mr. Omar lived in Yemen] was created immediately before Mr. Alghazali [sic] came to the United States.").

[8] Historically, Yemen has had poor record-keeping practices. *See, e.g.*, Technical Report on the Status of Civil Registration and Vital Statistics in ESCWA Region, U.N. Department of Economic and Social Affairs, Statistics Division, Demographic and Social Statistics Branch, ESA/STAT/2009/9, March 30, 2009, *available at* http://unstats.un.org/unsd/demographic/CRVS/Technical%20report%20ESCWA%20Final.pdf, ¶¶ 270-271 (noting that Yemen's civil record system was not computerized until the 1990s, and that "[p]eople come to register a vital event [such as birth, death, marriage] only when it is absolutely necessary (for school or for other documents)"). Furthermore, even today, few Yemenis register for civil documents such as birth certificates until they need them for some other purpose, such as immigration. *See id.* (an "assessment on the completeness of the civil registration system was done in 2003.... show[ing] that the

(continued…)

Department for its equal inability to produce evidence corroborating the existence of a second identity connected to Mr. Omar.[9]

On this record, Mr. Omar will very likely be able to demonstrate that the Department did not sustain the revocation with clear and convincing evidence, since no reasonable person could conclude that the Department's evidence at the hearing would create an "abiding conviction" that their factual contentions were "highly probable." *See Colorado*, 467 U.S. at 316.[10]

---

[registration] coverage was 39.2% for birth and 13.2% for deaths"); *see, also*, Bassem al-Khameri, *Majority of Yemeni minors lack birth certificates*, Yemen Times, Mar. 18, 2015, *available at* http://www.yementimes.com/en/1869/report/4978/Majority-of-Yemeni-minors-lack-birth-certificates.htm (reporting that "[i]n Yemen, 83 percent of minors remain without [a birth certificate]," and citing a Civil Registration Authority official saying that "applying for a birth certificate years after a child is born has become the norm in Yemen"); Yemen Situation Report: Key focus: Birth registration, UNICEF, October 2014, *available at* http://www.unicef.org/appeals/files/UNICEF_Yemen_SitRep_October_2014.pdf ("Yemen has the lowest birth registration rate in the Middle-East and North Africa region and one of the lowest in the world. Since 2006, birth registration rates have decreased from 22% to 17% in Yemen, meaning that 83% of children under 5 are without a birth certificate, have no legal identity and are therefore invisible.").

[9] The Department's representative at the hearing explained that "the Department's revocation was based solely on the sworn statement" because "[a]s you may be aware… the situation in Yemen is very dire right now, and it is very difficult to get any documentation." *See* Salahi Decl. ¶ 40, Ex. 35 at 47:10-15.

[10] Plaintiff maintains, in the alternative, that even if Defendants were obligated to support their revocation with nothing but a preponderance of the evidence, they failed to meet that burden, too. "[T]he preponderance of the evidence standard is a meaningful one that requires the judge to be *convinced* by a preponderance of the evidence that the fact in question exists." *United States v. Restrepo*, 946 F.2d 654, 661 (9th Cir. 1991) (emphasis added; citation and internal quotation marks omitted). The standard requires the factfinder to take in mind the reliability of the evidence, not simply "to perform an abstract weighing of the evidence in order to determine which side has produced the greater quantum, without regard to its effect in convincing his mind of the truth of proposition asserted." *In re Winship*, 397 U.S. at 367-68 (citation and internal quotation marks omitted). The factfinder must still find the government's evidence to be "reliable and thoroughly tested." *United States v. Mezas de Jesus*, 217 F.3d 638, 644 (9th Cir. 2000). In Mr. Omar's case, the government's sole piece of evidence was unreliable and was clearly outweighed by the unchallenged evidence Mr. Omar submitted to support his identity.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

17

**C.     Defendants exceeded their statutory authority by revoking Plaintiff's U.S. passport on the basis that he obtained it "fraudulently" by using his name, the name on his judicial Certificate of Naturalization.**

The Department's revocation of Mr. Omar's passport must also be overturned for the independent reason that the Department exceeded its statutory authority under 8 U.S.C. § 1504(a).[11] Simply, Mr. Omar did not obtain his passport "fraudulently" within the meaning of the statute because he applied for it using the name listed on his judicial Certificate of Naturalization. *See* 5 U.S.C. § 706(2)(C) (court may set aside agency action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right").

When applying for a passport, an applicant must demonstrate his or her eligibility by submitting both proof of citizenship and proof of identity. *See* 22 C.F.R. §§ 51.23(a) (identity) and 51.40 (citizenship). A judicial Certificate of Naturalization serves as evidence of both citizenship, *see* 22 C.F.R. § 51.43(b)(1)(i), and identity, *see* 22 C.F.R. § 51.23(b) (applicant may rely on "state, local, or federal government officially issued identification with photograph"). Once eligibility has been demonstrated, "[t]he passport shall be issued in the full name of the applicant, generally the name recorded in the evidence of nationality and identity." 22 C.F.R. § 51.25(a). *See also* 7 FAM § 1310(d), App. C ("The passport generally is issued in the name shown on the evidence of citizenship and identity, unless the applicant's name is subsequently changed by court order or through a customary change of name or as otherwise provided in the appendix.") (attached as Salahi Decl. ¶ 26, Ex. 23).

---

[11] In its entirety, 8 U.S.C. § 1504(a) states: "The Secretary of State is authorized to cancel any United States passport or Consular Report of Birth, or certified copy thereof, if it appears that such document was illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary. The person for or to whom such document has been issued or made shall be given, at such person's last known address, written notice of the cancellation of such document, together with the procedures for seeking a prompt post-cancellation hearing. The cancellation under this section of any document purporting to show the citizenship status of the person to whom it was issued shall affect only the document and not the citizenship status of the person in whose name the document was issued."

The Department issued Mr. Omar his most recent passport after he filed a renewal application in 2007. After Mr. Omar signed the Interrogation Statement at the U.S. Embassy in Sana'a, however, the Department revoked Mr. Omar's passport pursuant to 22 C.F.R. § 51.62(a)(2) and 8 U.S.C. § 1504(a) on the basis that it was procured "fraudulently" because his use of the name "Mosed Shaye Omar" in his passport application constituted a "false statement[] of material fact." Salahi Decl. ¶ 4, Ex. 1 at 2. But because the same Certificate of Naturalization establishes both Mr. Omar's identity and his citizenship, the only way in which Mr. Omar's use of his name to apply for a passport could be fraudulent is if his use of that name to immigrate to the United States and then to naturalize was also fraudulent. The Department's revocation of Mr. Omar's passport thus amounts to an improper collateral attack on his citizenship, purportedly obtained under this "fraudulent" name. [12]

The principle that judgments of naturalization may not be collaterally attacked is established in judicial precedent nearly as old as naturalization itself. Chief Justice John Marshall, writing for the Supreme Court in a property dispute in which the validity of another court's order of naturalization would have affected one party's property rights, reasoned that a court's judgment of naturalization, "[i]t seems to us, if it be in legal form, [] close[s] all inquiry; and, like every other judgment, [it is] complete evidence of its own validity." *Spratt v. Spratt*, 29 U.S. 393, 408 (1830). *Accord*, *Johanessen v. United States*, 225 U.S. 227, 236 (1912) (judicial certificate of naturalization is "complete evidence of its own validity" which has "immunity... from collateral attack"); *Mut. Benefit Life Ins. Co. v. Tisdale*, 91 U.S. 238, 245 (1875) ("A certificate of naturalization issues from a court of record… [and] is, against all the world, a judgment of citizenship…. It is conclusive as such…."). To question whether the name Plaintiff used to naturalize as a U.S. citizen was false or fraudulent is to question the validity of the court's prior judgment of citizenship, which, by this rule, is beyond the Department's authority. *See, also*, *Magnuson*

---

[12] To be sure, mere misrepresentation during immigration or naturalization is not sufficient to support denaturalization. *See, e.g.*, *United States v. Rossi*, 299 F.2d 650, 652-53 (9th Cir. 1962) (holding that man who assumed identity of deceased brother for immigration and naturalization could not be denaturalized absent clear and convincing evidence he would have been otherwise unentitled to visa). Rather, such misrepresentation must be "willful" and "material" to justify withdrawal of citizenship. *See Kungys v. United States*, 485 U.S. 759, 767-68 (1988).

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

19

*v. Baker*, 911 F.2d 330, 333 n.6 (9th Cir. 1990) (explaining, in dicta, that "[b]ecause a certificate [of naturalization] is conclusive evidence of citizenship, if a holder of a certificate from a naturalization court presented the certificate to the Secretary [of State] in order to obtain a passport, the Secretary could not relitigate the citizenship issue. The Secretary could question only the certificate's authenticity, i.e., whether the certificate is a forgery."). *Cf.* 41 U.S. Op. Atty. Gen. 452, 459-60 (Jan. 19, 1960) (concluding State Department could not refuse to issue a passport to an individual who had been issued a certificate of citizenship by a federal agency because such certificates, like judicial certificates of naturalization, are "not subject to impeachment in a collateral proceeding"); *In re Mendiola*, 647 F. Supp. 839, 841-42 (S.D.N.Y. 1986) (holding that a person holding a valid administrative certificate of citizenship may not be stripped of "a citizen's basic privileges").

The hearing officer responded to Mr. Omar's reliance on his judicial Certificate of Naturalization by arguing that the Department's revocation was not based on a question of citizenship, but rather, a question of identity.[13] However, the Department did not dispute that Plaintiff is the same person who immigrated to the United States as "Mosed Shaye Omar" and then took an oath of naturalization in federal district court in that name. Thus, there is no question whether Plaintiff is the same Mr. Omar who immigrated to the U.S. and subsequently naturalized as a U.S. citizen. Even the Department acknowledged it "determined that Yasin Mohamed Ali Alghazali [Plaintiff's alleged alter ego] and Mosed Shaye Omar are the same person." Salahi Decl. ¶ 4, Ex. 1 at 3.

What Officer Fellows treated as a question of identity, then, was really a question of citizenship. Several courts have recognized in a closely analogous context (suits for declaratory judgment of citizenship pursuant to 8 U.S.C. § 1503[14]) that the distinction between questions of citizenship and

---

[13] *See* Final Decision at 5 (responding to argument that "the petitioner's Naturalization Certificate entitles him to a U.S. passport in the name Mosed Shaye Omar because it is proof of citizenship" by stating that "[e]ven if that is the case, [petitioner] has failed to establish his *identity* as Mr. Mosed Shaye Omar") (emphasis added).

[14] 8 U.S.C. § 1503(a) states: "If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, *upon the ground that he is not a national of the United States*, such person

(continued…)

questions of identity can, in some factual circumstances, collapse. For example, in *Wong Fon Haw v. Dulles*, 125 F. Supp. 658 (S.D.N.Y. 1954), plaintiff Wong Fon Haw sought a declaratory judgment of citizenship after the State Department denied his passport on the basis of his "inability to identify himself as the son of Wong Ah You [a U.S. citizen]." *Id.* at 659. The State Department argued that Wong Fon Haw could not seek a judicial declaration of citizenship because "denial of his application [for a passport] by defendant was not, as the statute requires, 'upon the ground that he is not a national of the United States,' but rather because plaintiff had not established his identity." *Id.* The court rejected this argument as "sheer sophistry" because "plaintiff's identity and his citizenship were synonymous for purposes of his application in this case: to admit one is to concede the other; to deny one is to dispute both." *Id. Accord, Soo Hoo Doo Wing v. Dulles*, 147 F. Supp. 862, 863 (D. Conn. 1956) (finding jurisdiction under § 1503(a) although passport was denied for failure to establish identity, not non-citizenship, because "[the Consul's] refusal of the travel documentation, based on lack of proof of identity, is a denial of nationality…."); *Jew Jock Koon v. Dulles*, 139 F. Supp. 205, 206 (S.D. Tex. 1955) ("It is my opinion that to deny an application for passport on the ground that the applicant was not the person he purported to be is a denial upon the ground that he was not a national of the United States.").

These decisions establish that a question of identity can be tantamount to a question of citizenship.[15] That is the case here. Defendants did not dispute that Plaintiff was issued a judicial Certificate of Naturalization after he took an oath as Mosed Omar. The Department's allegation that Plaintiff's use of the name "Mosed Omar" is "fraudulent," if true, is incompatible with Plaintiff's judicial Certificate of Naturalization, which says otherwise. To give greater force to the Department's

---

may institute an action… for a judgment declaring him to be a national of the United States….." (emphasis added).

[15] Mr. Omar does not contend that *every* question of identity necessarily involves a question of citizenship. For example, if Abe, a U.S. citizen, steals Bob's Certificate of Naturalization and uses it to apply for and obtain a passport in Bob's name, the State Department may revoke the passport issued to Abe in Bob's name on the ground that Abe obtained it "fraudulently" by posing as Bob. The revocation in this case would involve a question of identity not directly related to Abe's citizenship status.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

21

1    allegation than a judicial order would render the latter a nullity, a situation which, in Chief Justice

2    Marshall's words, "might be productive of great mischief." *Spratt*, 29 U.S. at 408.

3           The Department's attempt to phrase its revocation of the passport as a matter of identity, not

4    citizenship, also makes no practical sense. If the Department accepts that Plaintiff's Certificate of

5    Naturalization proves he is a U.S. citizen (as it must), then what name *should* Plaintiff use on his

6    passport, if not the name on the Certificate? Mosed Shaye Omar is the only name he *could* use to obtain

7    a passport, because that is the name listed in his proof of citizenship.

8           Mr. Omar is thus likely to succeed in showing that the Department's revocation was outside its

9    statutory authority, since the allegation on which it was based—that it was improper for Mr. Omar to

10   rely upon a Certificate of Naturalization issued to him by a court conferring citizenship—was

11   tantamount to a collateral attack on his citizenship. The government certainly has the authority to

12   investigate naturalization or immigration fraud, but it must do so through the appropriate statutory

13   process. Short of that process, however, the State Department has no statutory authority to revoke a

14   passport as an indirect attack on a naturalized person's citizenship.

15   **II.    Mr. Omar Has Suffered and Continues to Endure Irreparable Harm From the Continued**

16           **Violation of his Constitutional Rights.**

17          It is well-established that, as a matter of law, "the deprivation of constitutional rights

18   'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir.

19   2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Roe v. Anderson*, 134 F.3d 1400,

20   1405 (9th Cir. 1998) (denial of Fifth Amendment equal protection met irreparable harm threshold);

21   *Jacobsen v. USPS*, 812 F.2d 1151, 1154 (9th Cir. 1987) (deprivation of First Amendment rights supports

22   finding of irreparable harm in preliminary injunction inquiry); *Fisher v. Kealoha*, No. 11–00589 ACK–

23   BMK, 2012 WL 2526923, at *11 (D. Haw. June 29, 2012) (finding that Plaintiff being deprived of a

24   liberty and property interest, and "deprivation of that constitutional right requires a finding of irreparable

25   injury.").

26          Here, by depriving Mr. Omar of his passport without due process, the State Department is

27   preventing Mr. Omar from exercising his fundamental right to travel abroad. *See Kent*, 357 U.S. at 125;

28   *Aptheker*, 378 U.S. at 505*; see also DeNieva*, 966 F.2d at 485 (right to international travel clearly

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

22

established as liberty interested protected by due process clause of the Fifth Amendment). "The denial of a passport, given existing domestic and foreign laws, is a severe restriction upon, and in effect a prohibition against, world-wide foreign travel." *Aptheker*, 378 U.S. at 507. Such a violation is itself irreparable harm.

As a result of being unable to exercise his fundamental constitutional rights, Mr. Omar also suffers concrete irreparable consequences. Being unable to travel internationally prevents Mr. Omar from visiting his youngest daughter, K.O., who remains in Yemen. *See Leiva-Perez v. Holder*, 640 F.3d 962, 969-70 (9th Cir. 2011) (identifying "separation from family members" as an important factor showing irreparable harm). Even though the U.S. Embassy in Yemen is currently closed because of the political conflict there, Mr. Omar wants and needs to be able to go abroad at a moment's notice. Supp. Omar Decl. ¶¶ 9-10. If a window of opportunity were to open for his daughter, time would be of the essence. *Cf. Latif v. Holder*, 28 F. Supp.3d 1134, 1148 (D. Or. 2014) (holding that plaintiffs on No Fly List had constitutionally protected liberty interest in traveling internationally by airplane, not just boat and auto, considering "the numerous reasons that an individual may have for wanting or needing to travel overseas *quickly* such as the birth of a child, the death of a loved one, a business opportunity, or a religious obligation") (emphasis added). Moreover, Mr. Omar suffers from serious chronic medical conditions that may limit his ability to travel internationally in the future. Supp. Omar Decl. ¶¶ 2, 8. If he is not granted a preliminary injunction now, Mr. Omar's future ability to travel to see his daughter may be extremely limited.

It is therefore essential for Mr. Omar to have his passport restored as soon as possible, to allow him to exercise his constitutional liberty to travel internationally and maximize the chances that he may see his daughter while he still can.

## III.   The Balance of Hardships and Public Interest Favor an Injunction to Prevent Further Constitutional Violations.

The final two elements of the preliminary injunction test—whether the public interest and the balance of the equities favor an injunction—merge when the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014); s*ee also League of Wilderness Defenders/Blue*

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

23

*Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). Mr. Omar satisfies both elements.

Here, the balance of equities tips "sharply in favor" of an injunction. *See Alliance*, 632 F.3d at 1137-39. Without his passport, Mr. Omar will continue to suffer the significant hardship of being unable to travel abroad. *See Vartelas v. Holder*, 132 S. Ct. 1479, 1482 (2012) (finding that "losing the ability to travel abroad is itself a harsh penalty, made all the more devastating if it means enduring separation from close family members"). This inability to travel is not only a continuing violation of his constitutional rights, as discussed in Section II, above, but it also prevents him from seeing his young daughter and other relatives in Yemen.

In contrast, the State Department would not suffer any harm from being required to cease violating Mr. Omar's constitutional rights and comply with the law. *See Legend Night Club v. Miller*, 637 F.3d 291, 302-03 (4th Cir. 2011) (finding that the government is "in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions"). The State Department has not questioned Mr. Omar's U.S. citizenship, nor can it establish that it would suffer any particular burden if Mr. Omar were free to exercise his constitutional liberty to travel. Thus, the balance of the equities weighs heavily in Mr. Omar's favor, as the harm to Mr. Omar if he did not receive a preliminary injunction would be severe and irreparable, while the harm, if any, that would result to the State Department if a preliminary injunction were granted would be extremely limited.

The public also has a strong interest in ensuring the protection of constitutional rights, such as Mr. Omar's rights to due process and international travel. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (public interest concerns "are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."); *see also Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002) ("it is always in the public interest to prevent the violation of a party's constitutional rights.") (citation and internal quotation marks omitted), abrogated on other grounds by *Winter*, 555 U.S. 7 (2008). Moreover, there is no public interest that "cut[s] in favor of *not* issuing the injunction." *Alliance*, 632 F.3d at 1138. Accordingly, the public interest inherent in protecting a citizen's constitutional and legal rights weighs in favor of returning Mr. Omar's passport.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

24

## CONCLUSION

For these reasons, Mr. Omar's motion for preliminary injunction should be granted and his passport returned or reissued to him.

DATED:  June 24, 2015

Respectfully submitted,

By:    /s/ Joanne Sum-Ping

Yaman Salahi (Bar No. 288752)
Nasrina Bargzie (Bar No. 238917)
ASIAN AMERICANS ADVANCING JUSTICE—
ASIAN LAW CAUCUS
55 Columbus Ave.
San Francisco, California 94111-2101
Telephone: + 1 (415) 848-7711
Facsimile: + 1 (415) 896-1702
Email: yamans@advancingjustice-alc.org;
nasrinab@advancingjustice-alc.org

Wendy L. Feng (Bar No. 200813)
Joanne Sum-Ping (Bar No. 296552)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: wfeng@cov.com; jsumping@cov.com

*Attorneys for Plaintiff Mosed Shaye Omar*

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
Civil Case No.: 15-01760-JSC

25