UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSED SHAYE OMAR, <br> Plaintiff, <br> v. <br> REX TILLERSON, et al., <br> Defendants. | Case No.15-cv-01760-JSC <br><br> **ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 80 & 81 |

Mosed Shaye Omar, a United States citizen, challenges the revocation of his passport following his interrogation and detention at the United States Embassy in Sana'a, Yemen, as well as the constitutionality of the post-revocation proceedings. The Court previously granted summary judgment in Plaintiff's favor and remanded to the State Department to provide Plaintiff with a full and fair hearing. On remand, the agency again upheld the revocation on the same basis. The parties' cross-motions for summary judgment are now pending before the Court. (Dkt. Nos. 80 & 81.)

The motions present a question of first impression: whether the United States government may revoke a citizen's passport on the grounds that his "true identity" is different from the name on his passport, even though the passport name is his unchallenged legal name. In particular, has the government met its burden to demonstrate that a citizen used fraud in obtaining a passport when the citizen applied for the passport in the name he has lived under since at least 1978, and that same allegedly fraudulently name is the name on the citizen's *unchallenged* certificate of naturalization, driver's license, social security card, and tax returns, among other documents identifying the citizen? The answer is no and thus the government's revocation of Plaintiff's passport was arbitrary and capricious. Accordingly, the Court grants Plaintiff's motion for summary judgment and denies the Government's cross motion.

**SUMMARY JUDGMENT EVIDENCE**

The Court summarized the factual record in detail in its prior two orders. (Dkt. Nos. 52 & 69.) Because the factual record is largely unchanged, the Court incorporates the recitation of the evidence from its prior orders by reference.

**PROCEDURAL HISTORY**

Plaintiff filed this civil action on April 20, 2015 seeking return of his passport and a declaration that Defendants—the United States Department of State, and various State Department officials, (collectively "Defendants" or "the government")—violated his rights under the Constitution, the Administrative Procedures Act ("APA"), and 8 U.S.C. § 1504.[1] (Dkt. No. 1.) Plaintiff alleges six causes of action under the APA: (1) Defendants' interpretation and application of 8 U.S.C. § 1504 is unconstitutional and exceeds their statutory authority; (2) Defendants failed to apply the "clear and convincing evidence" standard of proof at his passport revocation hearing; (3) Defendants improperly relied on an involuntary statement obtained in violation of Plaintiff's Fifth Amendment rights to revoke his passport; (4) Defendants failed to timely provide Plaintiff with written notice or a prompt hearing following revocation of his passport in violation of his Fifth Amendment rights; (5) Defendants' actions were arbitrary and capricious; and (6) Defendants failed to comply with APA rules of adjudication with respect to Plaintiff's passport revocation hearing. (Complaint ¶¶ 120-155.)

**1. The Preliminary Injunction and Initial Summary Judgment Proceedings**

Plaintiff filed a motion for preliminary injunction seeking the return of his passport. (Dkt. Nos. 14 & 23.) The Court granted the motion and ordered the government to return his passport. (Dkt. No. 52.) The Court then granted Plaintiff's motion for summary judgment concluding that (1) the statement made by Plaintiff at the US Embassy in Sana'a Yemen on January 23, 2013 ("the Statement") was not substantial evidence of fraud; (2) the Hearing Officer erred in failing to set forth and apply any standard of proof in the revocation proceeding; and (3) the Hearing Officer

---

[1] Rex Tillerson, Secretary of State, and David Donahue, Acting Assistant Secretary for Consular Affairs, are substituted for their predecessors John Kerry and Michele Bond, respectively, pursuant to Federal Rule of Civil Procedure 25(d).

2

erred in failing to require the government to bear the burden of proof. (Dkt. No. 69.) The Court held that that a citizen's right to travel is a fundamental right and that revocation of a passport, particularly when it occurs while the individual is outside the United States, significantly infringes upon that right, but the Court left it to the State Department to decide in the first instance whether the standard of proof for such a revocation was by a preponderance of the evidence or clear and convincing evidence. The Court then remanded to the State Department to afford Plaintiff a full and fair hearing regarding the government's allegation that Plaintiff's passport is subject to revocation under 22 C.F.R. § 51.62(a)(2).

### 2. The Remanded State Department Revocation Hearing

In the remanded proceeding, and after many extensions of the briefing schedule, the government filed its brief in support of the passport revocation on March 11, 2016. (Supplemental Certified Administrative Record ("SAR") 10.) The only evidence offered in support of the government's brief was (1) Plaintiff's passport application; (2) the letter revoking Plaintiff's passport; and (3) Plaintiff's January 23, 2013 Statement. (SAR 18-27.) Plaintiff's opposition brief was accompanied by several exhibits including, but not limited to, Plaintiff's September 14, 2014 declaration disavowing the Statement and attesting to its involuntariness; Plaintiff's certificate of naturalization; Plaintiff's California driver's license, Social Security card, AFL-CIO membership card, and his 2010 Federal Income Tax Return; Plaintiff's April 1972 vaccination record; and a translation of an affidavit of four individuals in Yemen who attest that they knew Plaintiff by the name Mosed Shaye Omar and no other name prior to 1972. (SAR 58-241.)

The government's reply brief argued that Plaintiff's Statement was voluntary, Plaintiff has shown a willingness to provide false statements and documentation to the State Department in the past, and that substantial evidence confirmed the veracity of Plaintiff's Statement. In support of its brief, the government offered six exhibits—all of which pre-date the government's opening brief in the remanded passport revocation proceeding—including: (1) a declaration from David W. Howell, the Special Agent with the U.S. Department of State, who obtained Plaintiff's January 23, 2013 Statement; (2) Plaintiff's 2002 and 2007 passport applications for his daughter; (3) Yemeni identification and vehicle cards in the name Mosed Shaye Omar Al Ghazali from 2012; and (4) a

3

declaration from Special Agent Aaron Ure and DNA test results for Plaintiff and two men Plaintiff previously claimed as his sons. (SAR 260-339.) The government stated it would present at the hearing Agent Howell and Consular Fraud Investigator Mohamed (last name withheld) who acted as a translator during Plaintiff's January 23, 2013 interview at the embassy. (SAR 257.)

In response, Plaintiff submitted a declaration from Bernard Haykel, professor of Near Eastern Studies at Princeton University, regarding dates of birth and naming conventions in Arabian countries. Professor Haykel attests that dates of birth are somewhat arbitrary in Yemen, and it is not uncommon for someone to have four names, but only use three. (SAR 341.) Plaintiff also submitted (1) DNA test results for himself and his daughter; (2) a declaration of a woman from Yemen attesting that Al Ghazali is a common name in Yemen and that Yemeni documents require individuals to list four names; (3) a declaration from an endocrinologist; (4) a news article stating that the Department of State's Office of Inspector General was conducting an investigation regarding the US Embassy in Sana'a, Yemen; (5) a declaration from an attorney with the Creating Law Enforcement Accountability & Responsibility project who had spoken to several US citizens who had problems with their passports being revoked at the US Embassy in Sana'a, Yemen; and (6) a January 25, 2016 letter from several organizations asking the Department of State's Office of Inspector General to conduct an investigation into passport revocations at the US Embassy in Sana'a, Yemen. (SAR 346-440.)

Plaintiff thereafter repeatedly sought confirmation that Agent Howell and Investigator Mohammed would testify at the December 5, 2016 hearing. (SAR 1251 (October 24, 2016 email from Plaintiff's counsel seeking to confirm that the government still intended to call both witnesses); SAR 1258 (November 28, 2016 email from Plaintiff's counsel following-up to confirm witnesses); SAR 1262 (November 29, 2016 responsive email from the government confirming "agreement to provide witnesses three business days before the hearing"); SAR 1266 (November 29, 2016 email from Plaintiff's counsel disavowing any such agreement and asking for confirmation regarding witnesses).) It was not until December 1—two business days before the hearing—that the government advised Plaintiff and the Hearing Officer that it did not intend to present any live witnesses after all. (SAR 441.) At that point, the government offered the

4

1  affidavit of Investigator Mohammed. (SAR 445.) At the hearing, Plaintiff objected to the
2  declarations and asked the Hearing Officer to exercise his discretion under 22 C.F.R. § 51.71(d) to
3  order a video deposition of Agent Howell and Investigator Mohammed. (SAR 500.) The Hearing
4  Officer stated "I will note your objection to the affidavits. I'm going to conditionally accept them,
5  but I will note your objection in my deliberations." (SAR 504.)

On March 2, 2017, the Hearing Officer issued his decision. The Officer concluded that the government had met its burden of showing by a preponderance of the evidence that Plaintiff's true identity was Yasin Mohamed Ali Alghasali and not Mosed Shaye Omar and that because Plaintiff made a false statement of material fact in his passport application, his passport was properly revoked under 22 CFR § 51.62(a)(2). (SAR 1215.) The Hearing Officer concluded further that the Statement was properly obtained in light of the declarations of Agent Howell and Inspector Mohammed. (SAR 1228.) The Hearing Officer did not address Plaintiff's objection to the declarations or Plaintiff's request that they be subject to deposition, despite having stated that he would do so. Instead, the Hearing Officer fully credited Howell and Mohammed's statements and used them to discredit the statements in Plaintiff's declaration. The Hearing Officer also considered the other evidence offered by the government on reply and used it as a predicate for an adverse credibility finding. (SAR 1228-1230.) In particular, the Hearing Officer found Plaintiff not credible because (1) he provided two different birthdates for his daughter on two passport applications on her behalf on September 15, 1999 and February 15, 1999, respectively, which indicates that "Petitioner provided false information to the Department on at least one of these occasions" (SAR 1221); (2) DNA evidence verifies the portion of Plaintiff's Statement where he admits that two men claimed as his sons were not in fact his biological sons (SAR 1222); and (3) identity and vehicle cards list Alghazali as Plaintiff's fourth name, i.e, Mosed Shaye Omar Alghazali, which shows that the name Alghazali "was not fabricated by Agent Howell." (SAR 1221.)

Following the Hearing Officer's decision, the parties stipulated to a schedule for a new round of summary judgment briefing. (SAR 78.) Those motions are fully briefed and were argued and submitted on November 9, 2017. (Dkt. Nos. 80, 81, 82, 83 & 90.) Given issues raised

5

1 by the parties regarding mootness if the Court did not rule prior to the expiration of Plaintiff's
2 passport on November 14, 2017, the Court issued an abbreviated order granting Plaintiff's motion
3 for summary judgment on November 13, 2017. (Dkt. No. 92.) This reasoned order follows.

**LEGAL STANDARD**

The APA provides for judicial review of final agency decisions. 5 U.S.C. §§ 702, 706. Courts routinely resolve APA challenges to agency administrative decisions by summary judgment. *Nw. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1481 (9th Cir. 1994). However, courts do not utilize the standard analysis for determining whether a genuine issue of material fact exists. *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769–70 (9th Cir. 1985). Instead, the administrative agency serves as factfinder, and "the function of the district court is to determine whether ... as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*. The court thus considers the "legal question of whether the agency could reasonably have found the facts as it did." *Id*. at 770. "Because the presence of the administrative record, which the parties have stipulated to, usually means there are no genuine disputes of material fact, it allows the Court to decide whether to set aside the agency determination on summary judgment without a trial." *Sodipo v. Rosenberg*, 77 F. Supp. 3d 997, 1001 (N.D. Cal. 2015) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam)); *Hunter v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994) ("The motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.")).

Under the APA, a district court may overturn an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Family Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006) (citing 5 U.S.C. § 706(2)(A)). Purely legal questions are reviewed de novo. *See Howard v. FAA*, 17 F.3d 1213, 1215 (9th Cir. 1994); *see also* 5 U.S.C. § 706 (providing that "the reviewing court shall decide all relevant questions of law"). In contrast, the agency's factual findings are reviewed for substantial evidence. *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003), amended by 339 F.3d 1012 (9th Cir. 2003); *see also Wileman Bros. & Elliott, Inc. v. Espy*, 58 F.3d 1367, 1374–75 (9th Cir.

1995) ("When the arbitrary and capricious standard is performing that function of assuring factual support, there is no substantive difference between what it requires and what would be required by the substantial evidence test.") (internal quotation marks omitted), rev'd on other grounds, 521 U.S. 457, 117 (1997). The court will not disturb the agency's findings under this deferential standard "unless the evidence presented would compel a reasonable finder of fact to reach a contrary result." *Id*. at 895 (citation omitted). Credibility determinations are likewise subject to the substantial evidence standard, which although deferential, requires "specific, cogent reasons for disbelief"—"a passing reference to insufficiency or disbelief cannot constitute an adequate credibility determination." *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 661 (9th Cir. 2003).

## DISCUSSION

The government revoked Plaintiff's passport pursuant to 22 C.F.R. § 51.62(a)(2). That regulation allows the State Department to revoke a passport if "[t]he passport has been obtained illegally, fraudulently or erroneously; was created through illegality or fraud practiced upon the Department; or has been fraudulently altered or misused." (SAR 21-22.) The government maintains that Plaintiff made false statements of material fact in connection with his passport application; namely, that he represented that his true identity is Mosed Shaye Omar when it is in fact Yasin Mohamed Ali Alghazali. (*Id*. at 21.) The predicate for the revocation is Plaintiff's signed January 23, 2013 Statement. (*Id*.)

Plaintiff insists that use of his involuntary statement as a predicate for his passport revocation violates his due process rights. Plaintiff also maintains that his due process rights were violated because the Hearing Officer failed to apply a clear and convincing standard of proof and otherwise failed to afford him procedural due process protections in his remanded passport revocation hearing. The Court concludes that it is unnecessary to reach these issues because even if the Court accepts Plaintiff's Statement and credits the contents as true, regardless of the standard of proof, the Hearing Officer's determination that the government had met its burden to show that Plaintiff's representation regarding his name was fraudulent is not supported by substantial evidence. To the contrary, the government has failed to show that there is any legal basis to revoke Plaintiff's passport.

7

A "passport shall be issued in the full name of the applicant, generally the name recorded in the evidence of nationality and identity." 22 C.F.R. § 51.25(a). For this reason, "[t]he applicant must explain any material discrepancies between the name on the application and the name recorded in the evidence of nationality and identity." *Id*. at § 5125(b). Plaintiff's certificate of naturalization lists his name as Mosed Shaye Omar. (SAR 66.) Regardless of any name he may have used previously, this became Plaintiff's name at the time of his 1978 naturalization. *See* 8 U.S.C.A. § 1449; 8 C.F.R. § 338.1(a) ("The certificate must be issued to the applicant in accordance with section 338 of the Act in his or her true, full, and correct name as it exists at the time of the administration of the oath of allegiance."). According to the Department of State Foreign Affairs Manual, "Certificates of Naturalization are proof of United States citizenship. Consequently, we are bound by law to accept them as proof of citizenship and cannot look behind the certificate." 7 FAM § 1153(d). Even if "a post or passport agency believes that a Certificate of Naturalization was issued fraudulently, the person remains eligible for a U.S. passport until the naturalization certificate is revoked." *Id*. at § 1153(e)(4).

The government does not dispute that Mosed Shaye Omar is the name on Plaintiff's certificate of naturalization and it has made no attempt to challenge his naturalization or his citizenship. It also does not dispute that it is the name he has consistently used in the United States since his naturalization, including on his tax returns, previous passport applications, driver's license and social security card. (SAR 16, 68, 69, 71.) There can therefore be no fraud in using this same name to apply for a passport; indeed, it is the only name in which he could apply.

Plaintiff's signed January 2013 Statement, which states "[m]y true and correct name is Yasin Mohamed Ali Alghazali...I was smuggled to the US by a distant 'uncle' on my mother's side...I naturalized as a U.S. Citizen in 1978 under the assumed/fraudulent identity Mosed Shaye Omar" (SAR 4), does not make the government's position legally tenable. Even if the Court takes the Statement as true and accepts that Plaintiff naturalized under an "assumed/fraudulent identity," he still applied for the passport under his legal name and the government cannot point to a single regulation, case, opinion letter or even guidance that suggests the government can revoke a passport on the grounds that an American citizen's "true identity" is not the identity on all of his

8

unchallenged and therefore lawfully issued identification documents.

Moreover, even if the government could do so without ever challenging the citizen's naturalization certificate, the administrative record does not include any evidence as to what an "assumed/fraudulent identity" under the circumstances here means. Did Plaintiff make false statements when he applied for naturalization? The record does not contain any evidence that he did and in the nearly five years since he signed the Statement the government has not taken any steps to cancel his naturalization. Did he simply use a different name in Yemen before he was naturalized? If so, so what. Mosed Shaye Omar is still the name he naturalized under and that name—Mosed Shaye Omar—then became his "true, full, and correct name." 8 C.F.R. § 338.1(a).

> It shall be lawful at the time and as a part of the administration by a court of the oath of allegiance under section 1448(a) of this title for the court, in its discretion, upon the bona fide prayer of the applicant included in an appropriate petition to the court, to make a decree changing the name of said person, and the certificate of naturalization shall be issued in accordance therewith.

28 U.S.C. 1447(e); *see also In re: Chan*, 426 F. Supp. 680, 681 (S.D.N.Y. 1976) ("It was of course lawful for Chan to change his name at the time he filed his petition"); *In re Holland*, 237 F. 735, 736 (E.D. Pa. 1916) (noting that at the time of naturalization an individual can choose the name under which he naturalizes). Indeed, there is no fraud in the procurement of naturalization where an individual "pick[s] one of the[] names and st[i]ck[s] to it, or even use[s] two of them for separate and non-fraudulent purposes, as a woman may use her married name for social purposes and her maiden name for business or professional purposes." *United States v. El Beialy*, 539 F. App'x 791, 795 (9th Cir. 2013), as amended (Nov. 27, 2013); *see also Maslenjak v. United States*, 137 S. Ct. 1918, 1929 (2017) (holding that for the offense of procurement of citizenship by fraud, 18 U.S.C. § 1425, the requisite false statement is not "material" if it does not "influence the decision to approve" an application). Thus, even if the Court assumes that Plaintiff changed his name to Mosed Shaye Omar at the time he naturalized, he was fully within his legal rights to do so and thus he did not engage in fraud when he applied for his passport.[2]

---

[2] Again, the Court assumes this fact—there has, however, been no evidence to this effect.

9

Further, that Plaintiff listed a fourth name on his Yemeni vehicle and identification documents which appear to date from 2012—five years after he submitted the at-issue passport application— does not demonstrate that his name is Yasin Mohamed Ali Alghazali—or more critically—that his name is *not* Mosed Shaye Omar. The Declaration of Professor Bernard Haykel discusses the "'four-part' patronymic system of naming in Arabian countries such as Yemen wherein "individuals are officially known by their first name, followed by the name of their father, followed by the name of their grandfather, and ultimately that of their great grandfather if this becomes necessary." (SAR 342 at ¶ 5.) But the usage of all four names is a matter of personal preference and "there are no fixed rules on this matter." (*Id.* at ¶ 6.) *See also* 7 FAM § 1393, Appx C (SAR 106) (noting that "in the Arabian peninsula . . . family names, in the western sense, do not exist." In the context of passports, the Foreign Affairs Manual directs that for Arabic names, "[t]he name should be written as used by the applicant and shown on the citizenship evidence and identification."). Plaintiff chose, as he is entitled, to put three names on his citizenship application and he put those same three names on his passport application, his driver's license, his social security card, and his tax returns. Then, when he traveled to Yemen, he put a fourth additional name on his identification documents as is the custom. This is not substantial evidence of fraud, even if the government could revoke Plaintiff's passport because he applied for it in his American legal name.

At oral argument, the government suggested an alternative basis for revocation, namely, that Plaintiff did not list Yasin Mohamed Ali Alghazali for "what other names have you used" under Box 20 on his passport application. (SAR 7.) But this was not the basis for the revocation; rather, the passport revocation notice stated:

> An investigation revealed that you are not Mosed Saye Omar, born on February 1, 1951. In fact, you are Yasin Mohamed Ali Alghazali, born on February 1, 1951. On January 23, 2013, you signed a sworn statement admitting that your true identity is Yasin Mohamed Ali Alghazali. Because you made a false statement of material fact in your passport application, your passport is revoked pursuant to Section 51.62(a)(2) of Title 22 of the U.S. Code of Federal Regulations.

(SAR 21.) The Hearing Officer upheld the revocation finding that "it was more likely than not

10

that [Plaintiff] made false statements on his passport application, that the applicant's true identity is Yasin Mohamed Ali Alghazali and that he thus fraudulently obtained a U.S. passport product under the name Mosed Share Omar." (SAR 1233.) The government cannot now alter its basis for revocation. *See California Energy Comm'n v. Dep't of Energy*, 585 F.3d 1143, 1150 (9th Cir. 2009) (noting that in APA cases under the arbitrary and capricious standard "we will uphold an agency decision only on the basis of the reasoning articulated therein."). In any event, there is nothing in the record that suggests that such an omission is material. *See Maslenjak*, 137 S. Ct. at 1929.

In sum, the government has not shown that there is anything fraudulent about Plaintiff using the name under which he was naturalized in 1978 on his passport application. The revocation of Plaintiff's passport was therefore legally improper and must be reversed. Summary judgment is thus granted in Plaintiff's favor on his fifth cause of action alleging violation of the APA, 5 U.S.C. §§ 702, 706(2). There is no basis for remand where, as here, the Court concludes that the revocation was improper as a matter of law. *See Medina-Lara v. Holder*, 771 F.3d 1106, 1118 (9th Cir. 2014) ("Where, as here, only purely legal issues remain, it 'would serve no purpose' to remand to the agency.").

\*\*\*

Plaintiff's remaining causes of action shall be dismissed as moot. The first cause of action maintains that Defendants' interpretation and application of 8 U.S.C. § 1504 is unconstitutional and exceeds Defendants' statutory authority; however, Plaintiff's summary judgment briefing following remand does not address this argument, and instead, focuses on whether there is a legal basis for the revocation which the Court concludes there is not. The second cause of action seeks a declaration that the government should have used a clear and convincing rather than a preponderance of the evidence standard when reviewing the revocation of his passport because it denied him the fundamental right to travel. The strength of Plaintiff's argument, however, lies in the purgatory in which the government desires to place Plaintiff: forever unable to leave the United States because it refuses to accept his unchallenged certificate of naturalization. As the Court has ruled, however, the government's refusal is legally unsupportable; thus, the

circumstances that might require a clear and convincing standard should not have arisen in the first place. Finally, the remaining causes of action (the third, fourth, and sixth) all relate to Plaintiff's arguments that the government cannot rely on his January 2013 Statement to revoke his passport because it was involuntary and that the passport revocation process was otherwise improper and unconstitutional. Although the Court accepts the Statement as true for purposes of this Order, the Court is by no means finding that it *is* true or otherwise ruling on the legality of the Statement or the passport revocation process generally. To the contrary, the Court's prior orders clearly reflect skepticism regarding the voluntariness of the statement and the constitutionality of the revocation process. (Dkt. Nos. 52 & 69.) It is unnecessary to reach these issues, however, because the passport revocation was improper as a matter of law regardless of the constitutionality of underlying conduct.

## CONCLUSION

The government insists that it can revoke a citizen's passport on the grounds that it was applied for under a false identity even though the citizen applied for the passport under the only name he has ever used as a citizen, the same name that appears on all of his legal documents, including his certificate of naturalization. And it insists that it can do so and never challenge the citizen's naturalization. For the reasons explained above, the Court disagrees. Accordingly, Plaintiff's motion for summary judgment is GRANTED on the fifth cause of action and the government's cross-motion is DENIED. The passport revocation is reversed and the government is enjoined from revoking or denying Mr. Omar's passport on this same basis. Because the Court concludes that the revocation was arbitrary and capricious under 5 U.S.C. § 706, it is unnecessary to reach the remainder of Plaintiff's claims and thus those claims are dismissed as moot.

This Order disposes of Docket Nos. 80 and 81.

**IT IS SO ORDERED.**

Dated: November 28, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge